UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GLORIA CROWELL, et al., <br><br>            Plaintiff(s), <br><br>     v. <br><br> AUDIBLE INC., <br><br>            Defendant(s). | CASE NO. C25-0606-KKE <br><br> ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS |

Plaintiffs Gloria Crowell and Kevin Smith bring this putative class action alleging that Defendant Audible Inc. ("Audible") illegally used online tracking tools to record their audiobook browsing and listening information and share it with Meta Platforms, Inc. ("Meta") without their consent. According to their complaint, Audible tracked and shared this information to generate targeted advertising based on the audiobooks Crowell, Smith, and other Audible users viewed and listened to on Audible's website. All Crowell and Smith's claims arise under California law. But when they signed in to their accounts on Audible's website, they agreed that Washington law would govern any dispute with Audible. Accordingly, the Court finds that Crowell and Smith's California claims must be dismissed. However, the Court grants leave to amend to replead the claims under Washington law.

## I.   BACKGROUND

A.   **Plaintiffs' Allegations**[1]

Audible is an audiobook and spoken audio entertainment company that describes itself as "the leading producer and provider of audio storytelling." Dkt. No. 1 ¶ 37. Subscribers to Audible's service gain access to its "extensive catalog of audiobooks" via its website, audible.com, and its iOS and Android mobile applications. *Id.* For a monthly fee, subscribers can browse, purchase, or access for free "thousands of select audiobooks and podcasts." *Id.* ¶ 39. Access to Audible's services requires an account with Audible's parent company, Amazon.com, Inc. ("Amazon"). *Id.* ¶ 38.

Crowell and Smith allege that Audible collects information about its subscribers' activities on audible.com—such as browsing, purchasing, or listening to audiobooks—and shares it with Meta, which operates the social media platform, Facebook. Audible tracks user actions and transmits them to Meta using a "tracking pixel." *Id.* ¶¶ 41–44, 59. Meta then matches this information, if possible, to a Facebook profile, allowing Meta and Audible to identify the person associated with the user activity on audible.com. *Id.* ¶¶ 44, 64.

A tracking pixel "is a piece of JavaScript code added to a website" that "is loaded when a user lands on the website hosting it." *Id.* ¶ 42. When someone visits a website hosting a tracking pixel, the pixel loads a library of functions that the website's operator can use to track actions taken on the website. *Id.* ¶¶ 42–43. For the duration of the visit, the tracking pixel logs and reports the user's actions along with a "specific ID" that allows the actions to be identified with a "specific website user." *Id.* ¶ 42 (citation modified).

---

[1] In resolving Audible's motion to dismiss, the Court assumes the factual allegations in the complaint are true. *Edmonson v. City of Martinez*, 17 F. App'x 678, 679 (9th Cir. 2001).

Crowell and Smith allege that audible.com hosts a tracking pixel (the "Meta Pixel") that Meta offers its advertising customers, including Audible. *Id.* ¶ 51. Meta's customers use Meta Pixel to learn how users are interacting with their websites and to generate marketing that targets users based, in part, on those interactions. When a user attempts to visit audible.com, Meta Pixel causes two sets of code to run in the background: Audible's own code and "[Meta's] embedded code," which "directs the user's browser to … send a separate message to [Meta's] servers." *Id.* ¶ 50. While users browse and interact with audiobooks on audible.com, Meta Pixel transmits information about those actions to Meta's servers. For instance, "[w]hen a user views an audiobook," Audible "discloses to [Meta] through the [Meta] Pixel the audiobook that the user viewed," including the book's title and a unique Amazon identification number that can be used to pinpoint the exact version of the book. *Id.* ¶¶ 60–63. If the user has a Facebook account, Meta Pixel also transmits a set of "cookies" that identify the user's "Facebook ID," which is "a string of numbers unique to every Facebook account." *Id.* ¶¶ 64–65, 66, 72–73, 75, 80. Using the Facebook ID, Meta matches activity on audible.com with specific Facebook users.

Meta and Audible use information about user activity gathered by Meta Pixel to generate and evaluate targeted advertising. For instance, Meta and Audible "track[] website visitors' actions" to analyze the effectiveness of Audible's ongoing marketing efforts and identify individuals more likely to be interested in particular ads. *Id.* ¶¶ 84–85, 89. Audible also uses a Meta service called "Advantage+[,]" which enables Audible to "create thousands of ads" that "target visitors based on how they have interacted with [audible.com] in the past[,]" "without having to configure each [ad] individually[.]" *Id.* ¶ 86.

Crowell and Smith are California residents who have both Audible and Facebook accounts. *Id.* ¶¶ 6–7, 11, 14–15, 19. They bring this suit on behalf of themselves and others similarly situated. *Id.* ¶ 91. According to their complaint, Audible used Meta Pixel to track their browsing and

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 3

purchasing activities on audible.com and transmit it, along with their Facebook IDs, to Meta. *Id.* ¶¶ 9, 17, 119. Crowell and Smith claim they never consented to Audible's use of Meta Pixel to "assist [Meta] with intercepting" their "protected communications on" audible.com, "including those that contained personally identifiable information and reading preferences." *Id.* ¶¶ 12, 20.

**B.    Procedural History**

Crowell and Smith initially filed this case in the U.S. District Court for the Northern District of California. *See generally* Dkt. No. 1. They assert two claims under the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 631, 632, and a claim for invasion of privacy under California's constitution. Dkt. No. 1 ¶¶ 100–123. As relief, they seek statutory damages available under CIPA, compensatory and punitive damages, disgorgement, and a declaratory judgment that Audible's conduct violates CIPA. *Id.* ¶¶ 123; *id.* at 34 (Prayer for Relief). In February 2025, the parties stipulated to transfer the case to this District. Dkt. Nos. 16, 17.

Audible then moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), raising two general arguments for dismissal: First, that Washington—not California—law governs, so Crowell and Smith's claims under California law must be dismissed. Second, that even if Washington law doesn't apply, the claims fail under California law. Dkt. No. 33. Crowell and Smith responded (Dkt. No. 41), Audible replied (Dkt. No. 43), and the Court heard oral argument (Dkt. No. 55). The parties also submitted notices of supplemental authority (Dkt. Nos. 44, 45, 51) and supplemental briefing on related issues (Dkt. Nos. 47, 48, 52). The matter is now ripe for the Court's consideration.

## II.    ANALYSIS

**A.    Legal Standard**

In evaluating a motion to dismiss under Rule 12(b)(6), a court examines the complaint to determine whether, assuming the facts alleged are true, the plaintiff has stated "a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

B.  **Subject Matter Jurisdiction**

The Court has subject matter jurisdiction over this putative class action under 28 U.S.C. § 1332 because Audible is a citizen of Delaware and New Jersey (Dkt. No. 1 ¶ 22), the putative class includes at least one member that is not a citizen of either Delaware or New Jersey (*id.* ¶¶ 6, 14), the amount in controversy exceeds $5 million (*id.* ¶ 3), and the putative class would exceed 100 members (*id.*). 28 U.S.C. § 1332(d)(2), (5).

C.  **Judicial Notice**

As an initial matter, Audible asks the Court to take judicial notice of the following materials under Federal Rule of Evidence 201 or, alternatively, consider them under the doctrine of incorporation by reference:[2]

1. The Audible Sign Up page, publicly available on audible.com[3];
2. The Audible Sign In page, publicly available on audible.com;
3. The current Audible Conditions of Use ("COUs"), publicly available on audible.com;
4. All prior versions of the Audible COUs, publicly available on audible.com during the putative class period, obtained from the Internet Archive (*see* web.archive.org);
5. The current Audible Interest-Based Ads Notice, publicly available on audible.com;

---

[2] Audible also asks the Court to consider various Facebook and Meta webpages. Dkt. No. 34 at 2–6; Dkt. No. 36 at 2. The Court finds it unnecessary to do so to resolve this motion.
[3] Hyperlinks to each page can be found at Dkt. No. 34.

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 5

      6.   The current Amazon COUs, publicly available on amazon.com;

      7.   The current Amazon Privacy Notice, publicly available on amazon.com;

      8.   All prior versions of the Amazon Privacy Notice, publicly available on amazon.com during the putative class period, obtained from the Internet Archive;

      9.   The current Amazon Cookies Policy, publicly available on amazon.com; and

      10. The Washington Secretary of State's Business Information page for Amazon.com, Inc.

Dkt. No. 34 at 2–6, Dkt. No. 36 at 2.

Crowell and Smith note that Audible's "exhibits all include highlighting that does not appear on the actual documents themselves." Dkt. No. 41 at 19–20. But as they acknowledge, Audible has also provided hyperlinks to the documents as they appear online without highlighting. *Id.* Crowell and Smith do not object to the Court taking judicial notice of the unhighlighted Audible and Amazon documents available online. Dkt. No. 57 at 30:6–14.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint[.]" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). But judicial notice under Federal Rule of Evidence 201 is an exception that permits courts to consider adjudicative facts "not subject to reasonable dispute." *Id.* at 999. A fact is "not subject to reasonable dispute" if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

The Court first considers the various privacy policies, COUs, and sign-up and sign-in pages. Dkt. No. 34 at 2–5. Each of these documents is publicly available on either Audible's or Amazon's website, and their authenticity is beyond reasonable dispute. Accordingly, the Court takes judicial notice of the Audible and Amazon pages listed above. *Id.*

Audible also asks the Court to take judicial notice of the Washington Secretary of State's business information page for Amazon. *Id.* at 6. "[O]fficial information posted on a governmental website" is subject to judicial notice if its "accuracy … is undisputed." *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015) (alteration omitted) (quoting *Dudum v. Arntz*, 640 F.3d 1098, 1101 n.6 (9th Cir. 2011)). Courts routinely take judicial notice of information contained in public records maintained by the Washington Secretary of State. *See, e.g., SEC v. Lidingo Holdings, LLC*, No. C17-1600-RSM, 2018 WL 3608407, at *2 (W.D. Wash. July 26, 2018). Crowell and Smith do not dispute the page's authenticity. Accordingly, the Court takes judicial notice of this page as well. Dkt. No. 34 at 6.

D.     **Choice of Law**

Audible contends that Washington—rather than California—law governs this dispute under a choice-of-law provision found in Amazon's COUs. That provision states: "By using any Amazon Service [including Audible], you agree that … the laws of the state of Washington, without regard to principles of conflict of laws, will govern … any dispute of any sort that might arise between you and Amazon [or its affiliates]." Dkt. No. 36-7 at 5. If Audible is correct that Washington law applies, Crowell and Smith's claims under California law must be dismissed. *See In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1266 (W.D. Wash. 2023) (dismissing California claims where Washington law applied), *aff'd*, No. 24-5176, 2025 WL 2268252 (9th Cir. Aug. 8, 2025).

Crowell and Smith do not dispute that the choice-of-law provision, if enforceable, would encompass their claims under CIPA and the California constitution. *See* Dkt. No. 41 at 17–19; *see also Heinz v. Amazon.com Inc.*, No. 2:23-CV-1073, 2024 WL 2091108, at *4 (W.D. Wash. May 8, 2024) (describing Amazon's "choice-of-law provision" as "extremely broad" and holding it "encompasses claims that arise in tort, including" CIPA claims). Instead, they contend they never

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 7

assented to the provision and that, even if they did, it is unenforceable because applying Washington law would undermine a fundamental public policy of the State of California. Dkt. No. 41 at 10–19. The Court considers each argument in turn.

1. Crowell and Smith Assented to the Choice-Of-Law Provision

Because "contract formation is a question of state law," the Court must first determine which state's law to apply in evaluating whether Crowell and Smith assented to the choice-of-law provision. *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025). Under Washington's choice-of-law rules, "Washington law presumptively applies" "[a]bsent an actual conflict."[4] *Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007, 1012–13 (W.D. Wash. 2010); *see Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001) (federal courts apply the choice-of-law rules of the state in which they sit). The parties do not identify a conflict between Washington or any other state's law with respect to internet contract formation, so Washington law governs the threshold issue of assent. *See Godun*, 135 F.4th at 708 ("[W]e have consistently stated that no differences exist in the law of the different states as to internet contract formation.").

To form a valid contract under Washington law, "the parties must objectively manifest their mutual assent." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). In the context of online consumer transactions, mutual assent typically turns on whether the consumer had reasonable notice of the website's terms and conditions. *See Nguyen v. Barnes &*

---

[4] Ordinarily, the Court would apply California's choice-of-law rules because the parties transferred this case from the Northern District of California under 28 U.S.C. § 1404(a). Dkt. No. 17; *see Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990) (when a case is transferred under § 1404(a), the "transferee court must follow the choice-of-law rules that prevailed in the transferor court"). But "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013). The Amazon COUs contain a Washington forum-selection clause. Dkt. No. 36-7 at 5. As explained below, Crowell and Smith agreed to those COUs, so the transfer in this case does not carry with it California's choice-of-law rules. *See Comerica Bank v. Whitehall Specialties, Inc.*, 352 F. Supp. 2d 1077, 1081 (C.D. Cal. 2004) (federal courts apply the law of the state in which they sit to determine if the parties agreed to a forum-selection clause).

*Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("[Absent] evidence that the website user had actual knowledge of the agreement, the validity of the … agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract."). The terms of an online user agreement will be enforceable if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

Audible contends that Crowell and Smith assented to the choice-of-law provision when they signed up for Audible subscription plans and, again, every time they signed into their accounts on audible.com. Crowell and Smith agree that the Audible sign-up and sign-in pages hyperlink to Audible's COUs, but they contend the hyperlink and choice-of-law provision—which is found in *Amazon's* COUs—were too inconspicuously disclosed to form a binding contract. The Court disagrees and finds that Crowell and Smith had adequate notice of the choice-of-law provision.

      a.     <u>Audible plan sign-up pages</u>

Many of Crowell and Smith's arguments concern Audible's sign-up pages for subscription plans, which they contend "ha[ve] numerous hallmarks that render the hyperlink to the Conditions of Use inconspicuous." Dkt. No. 41 at 11, *id.* at 13–14 ("These hyperlinks fail for lack of notice based on the extraneous text on the page that indicates assent only to terms regarding payment and more prominent promotional language."). For instance, they argue "[t]he hyperlink [to the Audible COUs] is in a multi-line paragraph" and appears "on a convoluted page with multiple form fields" and "extraneous text" that distracts users from text indicating that, by signing up, they agree to the Audible COUs. *Id.* at 11–14. Crowell and Smith concede, however, that Audible's sign-in screen, which they visited "regularly" to access audible.com (Dkt. No. 1 ¶¶ 7, 15), is "much less

cluttered[,] … with the hyperlinks pictured in blue, underlined, and directly below the 'continue' button." *Id.* at 14. Rather than focus on the sign-up pages, the Court therefore analyzes whether the sign-in page provided reasonably conspicuous notice of the terms containing the choice-of-law provision.

    b.  *Audible's sign-in page*

To access Audible, subscribers must sign in to their Amazon account. Dkt. No. 36-3. The sign-in page appears as follows:



Dkt. No. 41 at 14, Dkt. No. 36-3. The page informs subscribers just below the "Continue" button that, "[b]y signing in, you agree to Audible's Conditions of Use," and provides a blue, underlined hyperlink to the COUs. Dkt. No. 36-3. Crowell and Smith concede that the page provides "notice of the hyperlink" to the Audible COUs. Dkt. No. 41 at 14–15. But they argue it fails to clearly indicate that clicking "Continue" constitutes "signing in" and thus assenting to the terms. *Id.* This ambiguity, they claim, makes this case similar to *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025), in which the Ninth Circuit held that website users did not manifest assent to a website's

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 10

terms by clicking "continue" in the course of a multi-screen sign-up process. But Audible's sign-in page doesn't share the distinctive features that undermined assent in *Chabolla*.

The website in *Chabolla* had multiple pages users had to navigate to complete the sign-up process, all of which either lacked conspicuous notice of the terms or failed to clearly indicate what actions on the page would constitute assent. *Id.* at 1158–59. Crowell and Smith compare Audible's sign-in page to one of these ambiguous pages (Dkt. No. 41 at 14–15), which stated that "[b]y signing up you agree to our Terms of Use." 129 F.4th at 1158 (alteration in original). The page contained no "sign up" button and instead had fields for users to enter their first and last name and a button that said "Continue." *Id.* When users clicked through the screen, they were taken to a subsequent check-out page that required inputting additional information to finalize their membership. *Id.* at 1152–53. The Ninth Circuit held that, because it was unclear "that entering a first and last name and clicking … 'Continue' … amounts to 'signing up,'" the act of clicking "Continue" did not manifest assent to the terms. *Id.* at 1158.

Audible's sign-in page contains no such ambiguity. Unlike the page in *Chabolla*, it is a single screen with a single prominent action button that users like Crowell and Smith would have repeatedly navigated to sign in to their Amazon accounts. The "Continue" button—just below text directing the user to "[s]ign in with your Amazon account"—can mean only one thing: that by clicking "Continue" the user is signing in to their Amazon account and thus assenting to the Audible COUs. *See* Dkt. No. 36-3; *see Oberstein*, 60 F.4th at 516 (finding notice of terms sufficient where it appeared hyperlinked in "bright blue font" directly "above or below the action button"). *Chabolla* is also distinct in that it involved a sign-up page users would have navigated only once to create their membership. Crowell and Smith, by contrast, would have navigated Audible's sign-in page every time they accessed their accounts. If there was any ambiguity the first time they signed in, it would have been clear each subsequent time they did so that clicking

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 11

"Continue" meant "signing-in." *See* Dkt. No. 1 ¶¶ 7, 15 (alleging Crowell and Smith "regularly accessed the Audible Website to search for and purchase Audiobooks").

The Court finds Crowell and Smith had reasonably conspicuous notice of the Audible COUs and manifested their assent by signing in to their Audible accounts.

        c.      *Incorporation of the Amazon COUs*

Next, Crowell and Smith contend that, even if they assented to the Audible COUs, Audible failed to reasonably notify them of the choice-of-law provision contained in the *Amazon* COUs. Dkt. No. 41 at 15–16. The Audible COUs state that the Amazon COUs "form a part of this agreement" and, specifically, that the "governing law" terms in the Amazon COUs apply to disputes with Audible. Dkt. No. 36-4 at 2, 4. Crowell and Smith claim that this "terms within terms" approach failed to adequately notify them that the Audible COUs incorporated the choice-of-law provision. Dkt. No. 41 at 16.

Under Washington law, "[i]f the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 225 (Wash. 2009). Here, the Audible COUs prominently notify users that their agreement with Audible includes the Amazon COUs and specifically reference the choice-of-law provision. Such clear and unequivocal references are enough to bind Crowell and Smith to the choice-of-law provision.

Indeed, the second sentence of the Audible COUs states "the following terms … form a part of this agreement," and then lists the "Amazon.com Conditions of Use" as the very first item. Dkt. No. 36-4 at 2. The relevant text is highlighted in blue and contains a hyperlink to the Amazon COUs. *Id.* And if Audible users were curious what law would apply to disputes with Audible, they could scroll down to the section of the Audible COUs labeled "Disputes," which specifically

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 12

incorporates the "governing law … terms in the Amazon.com Conditions of Use," along with another blue hyperlink. *Id.* at 4.

Crowell and Smith cite several cases to support their contention that Audible's incorporation of the Amazon COUs is insufficient to notify them of the choice-of-law provision. Dkt. No. 41 at 16. But each case involved factors not present here that obfuscated the purportedly incorporated terms. *See Ajzenman v. Off. of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1077–78 (C.D. Cal. 2020) (separate terms were neither "enumerated nor … hyperlinked" in the agreement); *Ramirez v. Trusper, Inc.*, No. 5:24-CV-02012-EJD, 2024 WL 4479862, at *5–6 (N.D. Cal. Oct. 11, 2024) (hyperlink to separate terms was inconspicuous and in a different location than indicated in the initial pop-up page); *McGhee v. N. Am. Bancard, LLC*, No. 17-CV-0586-AJB-KSC, 2017 WL 3118799, at *3–4 (S.D. Cal. July 21, 2017) (hyperlinked terms contradicted terms of the agreement), *aff'd*, 755 F. App'x 718 (9th Cir. 2019). By contrast, Audible's COUs are more similar to the terms in *In re Holl*, in which the Ninth Circuit affirmed the district court's ruling enforcing an arbitration clause that was "expressly incorporated" using "clear language" in the "very first section" of an online agreement. 925 F.3d 1076, 1084 (9th Cir. 2019).

The Court finds Audible's COUs clearly and unequivocally incorporate the Amazon COUs by reference and, accordingly, that Crowell and Smith assented to the choice-of-law provision.

2. Enforceability of the Choice-Of-Law Provision

Having found that Crowell and Smith agreed to Washington law, the Court considers their contention that the choice-of-law provision is unenforceable because it violates fundamental California policies embodied in CIPA. In doing so, the Court again applies Washington's choice-of-law rules. *See Shannon-Vail Five Inc.*, 270 F.3d at 1210.

Washington courts "generally enforce contract choice of law provisions" subject to certain exceptions. *McKee v. AT & T Corp.*, 191 P.3d 845, 851 (Wash. 2008) (citing *Erwin v. Cotter Health Ctrs., Inc.*, 167 P.3d 1112, 1123 (Wash. 2007)). "Where parties dispute choice of law in the face of a contractual choice-of-law provision," the Court must "first determine (1) whether there is an actual conflict of laws between the two proposed states, and if so, (2) whether the choice-of-law provision is effective." *ACD Distrib., LLC v. Wizards of the Coast, LLC*, No. C18-1517JLR, 2020 WL 3266196, at *4 (W.D. Wash. June 17, 2020) (citing *Erwin*, 167 P.3d at 1120), *aff'd*, No. 20-35828, 2021 WL 4027805 (9th Cir. Sep. 3, 2021).

      a.     *There is a conflict between Washington and California law*

"[T]here is a real conflict" of laws "[i]f the result for a particular issue is different under the law of the two states." *ACD Distrib., LLC*, 2020 WL 3266196, at *4 (internal quotation marks omitted) (quoting *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997)). Crowell and Smith identify no conflict between Washington and California law with respect to their invasion of privacy claim under the California constitution. So, the Court need not conduct a choice-of-law analysis on that claim, and the choice-of-law provision controls. *See In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d at 1265–66 (giving effect to choice-of-law provision where "Plaintiff ha[d] not even attempted to show that there is an actual conflict between Washington and California consumer protection laws.").

Crowell and Smith do, however, point to a potential conflict between CIPA and Washington's analogous anti-wiretapping statute—the Washington Privacy Act ("WPA"), Wash. Rev. Code ch. 9.73. In particular, at least two federal district courts have held that, unlike CIPA, the WPA does not protect communications between "an individual and a business entity's automated system," such as a website. *In re Meta Pixel Tax Filing Cases* ("*In re Meta I*"), 724 F. Supp. 3d 987, 1007 (N.D. Cal. 2024); *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 14

JHC, 2024 WL 4785136, at *9 (W.D. Wash. Nov. 14, 2024). This conclusion follows from the WPA's text: The WPA states that it applies to any "individual, partnership, corporation, [or] association," and prohibits covered entities from intercepting communications "between two or more individuals[.]" Wash. Rev. Code § 9.73.030. Because the statute uses the words "corporation" and "individual" separately in the first clause, but only prohibits intercepting communications "between two or more *individuals*" in the second, the courts in *Castillo* and *In re Meta I* concluded the WPA does not prohibit intercepting communications between an individual and a corporation. *In re Meta I*, 724 F. Supp. 3d at 1007 (emphasis added); *Castillo*, 2024 WL 4785136, at *9; *see also In re Meta Pixel Tax Filing Cases* ("*In re Meta II*"), 743 F. Supp. 3d 1118, 1121 (N.D. Cal. 2024) (dismissing WPA claim in plaintiffs' amended complaint on same grounds). By contrast, CIPA generally prohibits intercepting any communication "without the consent of all parties to the communication," seemingly without regard to whether they are individuals or corporations. Cal. Penal Code § 631(a); *see also id.* § 632(a) (prohibiting eavesdropping on or recording "a confidential communication" "without the consent of all parties").

Audible does not dispute *Castillo* and *In re Meta I*'s interpretation of the WPA, but instead argues that "there is no real conflict" because the CIPA claims fail for "other reasons[.]" Dkt. No. 43 at 8. But according to *Castillo* and *In re Meta I*, a WPA claim challenging the tracking of an individual's browsing activity without consent would be dead on arrival unless there was another "individual" receiving the "communication" on the other end. That creates a real conflict because the result of the particular issue—whether Crowell and Smith may state a claim based on alleged interception of their communications with Audible's website—is different under Washington and California law.

Accordingly, Crowell and Smith have established a real conflict, and the Court must conduct a choice-of-law analysis.

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 15

    b.  *The choice-of-law provision is enforceable*

When faced with a real conflict, Washington courts will enforce a contractual choice-of-law provision unless a three-part test derived from § 187 of the Restatement (Second) of Conflicts of Laws (1971) ("Restatement") is satisfied. *McKee*, 191 P.3d at 851; *see also Erwin*, 167 P.3d at 1121. Under that test, the Court will "disregard the contract provision" and apply California law only if, (1) "without the provision, [California] law would apply"; (2) application of "the chosen state's law" would "violate[] a fundamental public policy of [California]"; and (3) "[California's] interest in the determination materially outweighs the chosen state's interests." *McKee*, 191 P.3d at 851. "The test is conjunctive: Washington courts invalidate a" choice-of-law provision "only if a moving party meets all three requirements." *In re Microsoft Xbox 360 Scratched Disc Litig.*, No. C07-1121-JCC, 2009 WL 10219350, at *3 (W.D. Wash. Oct. 5, 2009). As the parties resisting the choice-of-law provision, it is Crowell and Smith's burden to satisfy all three requirements. *See ACD Distrib., LLC*, 2020 WL 3266196, at *4.

Here, Crowell and Smith cannot show that applying Washington law would violate fundamental California public policy. To be "fundamental" within the meaning of Restatement § 187, "a policy must … be a substantial one." Restatement § 187 cmt. g. Importantly, "merely showing that the laws of two states differ does not establish that one state's laws violate the other state's public policy." *Ins. Auto Auctions, Inc. v. Indian Harbor Ins. Co.*, No. C09-1522RAJ, 2010 WL 11688494, at *6 (W.D. Wash. Sept. 16, 2010). Instead, courts consider whether the chosen law "would violate some fundamental principle of justice, some prevalent conception of good morals, [or] some deep-rooted tradition of the common weal" in the non-chosen state. *Untersteiner v. Untersteiner*, 650 P.2d 256, 259 n.3 (Wash. Ct. App. 1982) (quoting *Richardson v. Pac. Power & Light Co.*, 118 P.2d 985, 993 (1941)).

Crowell and Smith contend that, because the WPA does not protect communications between "an individual and a business entity's automated system[,]" applying Washington law would undermine the fundamental policy embodied in CIPA of protecting the privacy rights of California residents. Dkt. No. 41 at 18–19. To be sure, CIPA embodies a public policy of broadly protecting "the right of privacy of the people of" California from new "technolog[ies]" and "devices" for "eavesdropping upon private communications." Cal. Penal Code § 630; *see also Ribas v. Clark*, 696 P.2d 637, 639–40 (Cal. 1985) ("In enacting this statute, the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society.'") (alteration in original) (quoting Cal. Penal Code § 630). But applying Washington law would not violate that policy. Indeed, the WPA "is considered one of the most restrictive [anti-wiretapping statutes] in the nation." *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 996 (W.D. Wash. 2022). It prohibits "intercept[ing] or record[ing] any" communication "between two or more individuals" using "any device … designed to record and/or transmit said communication" without "the consent of all the participants in the communication[.]" Wash. Rev. Code § 9.73.030(1)(a).

While the WPA and CIPA do not entirely overlap, it does not "follow[] that because the statute of one state differs from the law of another state," the statute is therefore "contrary to *the policy* of the laws of the latter state." *Richardson*, 118 P.2d at 992 (emphasis added) (quoting *Herrick v. Minneapolis & St. L. Ry. Co.*, 16 N.W. 413, 414 (Minn. 1883)). Crowell and Smith emphasize that applying the WPA, as interpreted in *Castillo* and *In re Meta I*, "would leave Plaintiffs and Class Members … without a remedy" for Audible's alleged tracking of their browsing activity. Dkt. No. 41 at 19. But that "merely show[s] that the laws of [the] two states differ[.]" *Ins. Auto Auctions, Inc.*, 2010 WL 11688494, at *6. Holding the choice-of-law provision

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 17

unenforceable on that basis alone would effectively collapse the "actual conflict" requirement with the "violation of public policy" requirement.

Crowell and Smith identify no other authority—aside from the statutory difference itself—reflecting a fundamental California policy of protecting privacy in communications between individuals and a business entity's automated system. Courts would typically locate such a policy in a state's "constitution, its statutes, and the settled rules laid down by its courts." *Richardson*, 118 P.2d at 991–92. For instance, Washington courts have identified fundamental public policies from express legislative or judicial pronouncements declaring a specific policy contrary to the chosen state's laws. *See, e.g., McKee*, 191 P.3d at 852 (citing a Washington Supreme Court decision holding a class action waiver unconscionable as evidence of Washington's "fundamental public policy" favoring "the availability of class action" relief); *O'Brien v. Shearson Hayden Stone, Inc.*, 586 P.2d 830, 833 (citing a "clear and unequivocal" statement of public policy in Washington's usury statute to invalidate choice-of-law clause selecting laxer New York usury laws) (Wash. 1978), *supplemented*, 605 P.2d 779 (Wash. 1980). Here, CIPA does not say anything specific about protecting communications with a business entity's automated system. And Crowell and Smith cite no California state court decision that even *applies* CIPA in this context.

Crowell and Smith cite two cases concerning the Illinois Biometric Information Privacy Act ("BIPA"). But each further illustrates the sort of evidence of public policy lacking here. In each case, the court invalidated a choice-of-law provision after finding that BIPA's clear statutory language reflects a fundamental policy of "protecting [Illinois] citizens' right to privacy in their personal biometric data." *See In re Facebook Biometric Info. Priv. Litig.* ("*In re Facebook*"), 185 F. Supp. 3d 1155, 1169 (N.D. Cal. 2016); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 811–13 (N.D. Ill. 2022). *In re Facebook*, for instance, focused on BIPA's express legislative findings, which stated, among other things, that "[t]he public welfare, security and safety will be served by

ORDER GRANTING DEFENDANT AUDIBLE INC.'S MOTION TO DISMISS - 18

regulating the collection, use, … [and] handling … of biometric identifiers and information[.]" 185 F. Supp. 3d at 1169 (quoting 740 Ill. Comp. Stat. Ann. 14/5(e)). Similarly, the court in *Patterson* cited legislative findings "announcing that an 'overwhelming majority' of the public was 'weary … of the use of biometrics.'" 593 F. Supp. 3d at 811 (quoting 740 Ill. Comp. Stat. Ann. 14/5(d)). Based on these pronouncements and other clear statutory text, both courts concluded that BIPA, "[b]y its express terms, … manifests Illinois' substantial policy of protecting its citizens' right to privacy in their personal biometric data." *In re Facebook*, 185 F. Supp. 3d at 1169; *see also Patterson*, 593 F. Supp. 3d at 811. Accordingly, the courts refused to enforce choice-of-law clauses selecting non-Illinois law that "provide[d] no cause of action comparable to BIPA." *Patterson*, 593 F. Supp. 3d at 812; *In re Facebook*, 185 F. Supp. 3d at 1169.

Here, Crowell and Smith identify no analogous statutory language or legislative findings—or, indeed, any authority—reflecting a fundamental California policy in protecting its citizen's right to privacy in communicating with a business's automated system. And, unlike in *In re Facebook* and *Patterson*, Washington law provides an analogous—albeit, not identical—anti-wiretapping cause of action. *See Palomino v. Facebook, Inc.*, No. 16-CV-04230-HSG, 2017 WL 76901, at *4 (N.D. Cal. Jan. 9, 2017) (California law not "contrary to fundamental New Jersey policy" where it provided an analogous cause of action, but with "different rights and remedies").

Because Washington law is not contrary to fundamental California policy, the Washington choice-of-law provision is enforceable. The Court will therefore dismiss Crowell and Smith's claims without considering Audible's alternative arguments that the claims fail even under California law.

E.   **The Court Will Grant Leave to Amend**

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of

other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  The Court finds that Crowell and Smith could "possibly" replead their claims under Washington law and thus grants leave to amend.

### III.  CONCLUSION

Because Crowell and Smith agreed to Washington law, their complaint containing exclusively California claims fails to state a claim upon which relief may be granted.  Accordingly, the Court GRANTS Audible's motion to dismiss and DISMISSES Crowell and Smith's claims without prejudice.

Crowell and Smith may file an amended complaint by November 17, 2025.

Dated this 16th day of October, 2025.

Kymberly K. Evanson
United States District Judge